Jonathan A. Dessaules, State Bar No. 019439
**DESSAULES LAW GROUP**
7243 North 16th Street
Phoenix, Arizona 85020
Tel. 602.274.5400
Fax 602.274.5401
jdessaules@dessauleslaw.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| HAILEI JOE, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>OLIVE BRANCH ASSISTED LIVING, LLC, an Arizona limited liability company,<br><br>    Defendant. | No.<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff alleges:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Hailei Joe is a citizen of Arizona.

2. Defendant Olive Branch Assisted Living, LLC ("Olive Branch"), is an Arizona limited liability company with its principal place of business in Pinal County, Arizona.

3. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this action asserts claims under the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA"). Supplemental jurisdiction exists over the state law claims under 28 U.S.C. § 1367.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

5. Defendant operates a Residential Addiction Treatment Facility at 1121 N. Olive Avenue, Casa Grande, Arizona 85122.

6. Defendant publishes a Resident Manual "created to assist you during your treatment at Olive Branch Assisted Living" that generally sets forth the terms and conditions of residency and treatment at Olive Branch house, including house rules and behavior expectations, as well as "Resident Rights." A true and correct copy of the Resident Manual is attached hereto as Exhibit 1.

7. The "Resident Rights" include the following rights:

>    1. Not to be discriminated against based on race, national origin, religion, gender, sexual orientation, age, disability, marital status, or diagnosis.
>
>    * * *
>
>    3. To receive privacy in treatment and care for personal needs.

8. On October 18, 2022, Plaintiff moved into Olive Branch's residential treatment facility. At the time she moved in, Plaintiff informed Olive Branch's Health Manager Pedro that, though she had not yet been diagnosed with human immunodeficiency virus ("HIV"), she suspected she might be HIV-positive due to having flu-like symptons and requested HIV testing from Olive Branch.

9. Olive Branch failed to provide Plaintiff with any HIV testing.

10. On or about November 4, 2022, approximately two weeks after moving into the treatment facility, Plaintiff learned of her HIV-positive diagnosis after receiving blood testing from a different healthcare provider.

11. Plaintiff promptly reported her HIV-positive diagnosis to Defendant.

12. On or about November 4, 2022, Defendant's Manager Russell Appleton ("Mr. Appleton") told Plaintiff not to attend an outdoor field trip later

that day. Plaintiff was also told not to attend any more planned activities that involved other residents.

13. On or about November 4, 2022, Mr. Appleton called a group meeting and informed all residents that someone at the Olive Branch treatment facility had a HIV-positive diagnosis that everyone had a right to know about, and that, as a result of the diagnosis, the facility was no longer "safe" for residents.

14. As soon as the announcement referred to in paragraph 13 above, was made, Plaintiff began crying and was consoled by other residents of Olive Branch.

15. Also immediately after the group meeting, Mr. Appleton and another employee, Anissa, pulled Plaintiff aside and told her Defendant "did not know what to do" with Plaintiff and "didn't have the proper treatment plan for [her] disability." Defendant informed Plaintiff at that time that she had to vacate Defendant's facility as soon as possible

16. On or about November 7, 2022, Plaintiff was forced to move out of the treatment facility due solely to her HIV-positive diagnosis. Defendant also ceased providing addiction treatment services to Plaintiff because she was no longer a resident of the facility.

## COUNT ONE
## Violation of Federal Fair Housing Act

17. Plaintiff incorporates the above allegations as if set forth fully herein.

18. The Fair Housing Act makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap. *See, e.g.,* 42 U.S.C.A. § 3604(f)(2).

19. "Discrimination" includes, among other things, "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

20. Plaintiff's HIV-positive status constitutes a handicap under the FHA. Alternatively, Defendant regarded Plaintiff as having a handicap by virtue of her HIV-status.

21. Plaintiff's HIV-positive status does not present a direct threat to the health or safety of other individuals and Defendant had no reasonable basis to believe Plaintiff's HIV-positive diagnosis would endanger other residents' health or safety.

22. Defendant unlawfully discriminated against Plaintiff, kicking her out of the residential treatment program and ordering her to move out of the facility as soon as possible based on her HIV diagnosis and disability.

23. Plaintiff has suffered damages as a direct and proximate result of Defendant's unlawful discrimination, including but not limited to out-of-pocket expenses, inconvenience, humiliation, embarrassment, emotional distress, anxiety, and a deprivation of her right to enjoy housing opportunities regardless of her handicap status.

24. Plaintiff also requests an award of punitive or exemplary damages. Defendant terminated Plaintiff's residency and participation in the residential treatment program despite expressly assuring its residents they have "Resident Rights" to be free from discrimination on the basis of disability or diagnosis. Defendant's callous disregard for Plaintiff's rights, including those rights it pays lip service to in its Resident Manual, and deliberate indifference to Plaintiff's rights and interests subject it to an award of punitive or exemplary damages.

25. Plaintiff is entitled to an award of fees and costs pursuant to 42 U.S.C. § 3613(c)(2).

## COUNT TWO
### Violation of Arizona Fair Housing Act

26. Plaintiff incorporates the above allegations as if set forth fully herein.

27. The above allegations constitute a violation of A.R.S. § 41-1491.19(B).

28. Plaintiff is entitled to her actual and punitive damages.

29. Plaintiff is entitled to an award of fees and costs pursuant to A.R.S. §§ 41-1491.33 and 41-1491.36.

## COUNT THREE
### Violation of Americans with Disabilities Act
### 42 U.S.C.A. § 12182(a)

30. Plaintiff incorporates the above allegations as if set forth fully herein.

31. Title III of the Americans with Disabilities Act prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *See* 42 U.S.C.A. § 12182(a).

32. Unlawful discriminatory practices under Title III of the ADA include:

   a. The "denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity" on the basis of a disability. 42 U.S.C.A. § 12182(b)(1)(A)(i).

   b. Affording an "opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals" on the basis of a disability. 42 U.S.C.A. § 12182(b)(1)(A)(ii).

   c. Providing "a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is

5

necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is effective as that provided to others" on the basis of a disability. 42 U.S.C.A. § 12182(b)(1)(A)(iii).

33. Title III specifically prohibits:

- the imposition or application of eligibility criteria that screen out or tend to screen out an individual…from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered.

- a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

- a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

34. Defendant's treatment facility is a "place of public accommodation" under federal law.

35. Defendant violated Title III of the ADA by committing the acts alleged above. Specifically, Defendant denied Plaintiff the opportunity to participate in or benefit from the services it offers on the basis of a disability. Immediately upon learning of Plaintiff's diagnosis and disability, Defendant ceased providing services it provided to non-disabled individuals and demanded that Plaintiff vacate the property as soon as possible.

36. Plaintiff is entitled to her actual damages.

37. Plaintiff is entitled to an award of fees and costs pursuant to 42 U.S.C. § 12205.

## COUNT FOUR
## Public Disclosure of Private Facts

38. Plaintiff incorporates the above allegations as if set forth fully herein.

39. Arizona law recognizes the public disclosure of private facts as a tort which is actionable.

40. One who gives publicity to a matter concerning the private life of another is subject to liability for the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.

41. Defendant publicly disclosed Plaintiff's HIV diagnosis with other Olive Branch residents without her knowledge or consent. Plaintiff was unaware that her HIV status would be divulged to the other residents. Defendant's method for disclosing her HIV status to others, by informing residents they were not "safe" to be near Plaintiff would be highly offensive to a reasonable person. Nor was there a legitimate concern to the public necessitating the disclosure of Plaintiff's HIV diagnosis in the form it was published to others.

42. Plaintiff is entitled to her actual and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby demands judgment in her favor and against Defendant, an award of actual and punitive damages as proven at trial, her reasonable attorneys' fees and costs in bringing this action, and any other relief that is just and proper.

///

DATED this 16th day of October 2023.

                                DESSAULES LAW GROUP

                                By:   /s/ Jonathan A. Dessaules
                                          Jonathan A. Dessaules
                                          *Attorney for Plaintiff*