**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hailei Joe,<br><br>    Plaintiff,<br><br>v.<br><br>Olive Branch Assisted Living LLC,<br><br>    Defendant. | No. CV-23-02154-PHX-JJT<br><br>**ORDER** |

At issue are two motions: Defendant Olive Branch Assisted Living LLC's Motion for Summary Judgment (Doc. 71, D. Mot.), supported by a Statement of Facts (Doc. 72; Sealed Docs. 85–99, D. SOF), and Plaintiff Hailei Joe's Motion for Partial Summary Judgment (Doc. 73, Pl. Mot.), supported by a Statement of Facts (Doc. 74, Pl. SOF) and attached exhibits (Doc. 77; Sealed Docs. 76, 80–83). Plaintiff filed a Response in opposition to Defendant's Motion (Doc. 101, Pl. Resp.), supported by a Statement of Facts (Doc. 102; Sealed Docs. 106–12, Pl. Resp. SOF), and Defendant filed a Response in opposition to Plaintiff's Motion (Doc. 104, D. Resp.), supported by a Controverting and Separate Statement of Facts (Doc. 105, D. CSOF). Each party also filed a Reply (Docs. 114, 115). The Court will resolve the Motions without oral argument. LRCiv 7.2(f).

**I. Background**

This case concerns alleged discriminatory conduct on the part of Defendant against Plaintiff Hailei Joe during her stay at Olive Branch Assisted Living, a Residential Addiction Treatment Facility that provides counseling, psychiatric treatment, primary care,

and psychological care, among other services, to its residents. (D. SOF ¶ 2.) Defendant has a contractual relationship with non-party Teri's Health Services ("THS") through which THS provides case management services and "help[s] address needs and discharge plan as needed." (D. SOF ¶¶ 4–8, Ex. 2.)

Plaintiff struggled with drug addiction and consequently moved into Defendant's facility for substance abuse treatment on October 18, 2022, at which time she informed Defendant's staff that she suspected she may be HIV-positive. (Pl. SOF ¶¶ 5–6, Exs. 2, 4; D. SOF ¶ 17, Ex. 7.) Plaintiff underwent blood testing from a third-party health care provider and received an HIV-positive diagnosis on November 4, 2022. (Pl. SOF ¶¶ 9–10, Exs. 4, 6.) Plaintiff avers that she promptly reported her diagnosis to Defendant upon receipt. (Pl. SOF ¶ 10, Ex. 4.) Following her disclosure, Defendant's owner Russell Appleton organized a group meeting for all the facility's residents and informed them that someone in the facility had received an HIV-positive diagnosis. (D. SOF ¶¶ 59–60, Ex. 5.) Plaintiff avers that following that meeting Appleton told Plaintiff that the facility no longer had the proper treatment plan for her, as her needs were beyond what the team could provide. (D. SOF ¶¶ 68–70, Ex. 17.) On November 7, 2022, Plaintiff was discharged from Defendant's facility and transferred to non-party Cornerstone Healing Center. (Pl. SOF ¶¶ 12–13, Exs. 4, 8, 9.)

Following her discharge, Plaintiff filed a Fair Housing Act complaint with the Arizona Attorney General's Civil Rights Division. (Pl. SOF ¶ 14, Ex. 10.) Additionally, Plaintiff brought this action on October 16, 2023. (Doc. 1.) In the Amended Complaint, Plaintiff raises seven claims: (1) discrimination in violation of the Fair Housing Act, 42 U.S.C. § 3604 ("FHA"); (2) discrimination in violation of the Arizona Fair Housing Act, A.R.S. § 41-1491.19 ("AFHA"); (3) discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 ("ADA"); (4) public disclosure of private facts under Arizona common law; (5) retaliation under the FHA; (6) retaliation under the AFHA; and (7) retaliation under the ADA. (Doc. 19, Am. Compl. ¶¶ 23–65.) The relief she seeks includes a prayer for punitive damages.

On November 13 and 21, 2023, Defendant's counsel sent Plaintiff's counsel emails about the instant case and Defendant's plan for moving forward with the suit, which Plaintiff claims were threatening. (Pl. SOF ¶¶ 18–19, Ex. 13.) On December 17, 2023, Defendant filed a joint Answer and Counterclaim to the Complaint raising a claim of defamation, arguing that Plaintiff defamed Defendant by speaking to the Phoenix New Times about her experience with the facility. (Doc. 11.) Defendant continued to claim defamation in its Answer to the Amended Complaint. (Doc. 23.) After the Court permitted Defendant's prior counsel to withdraw (Doc. 31) and Defendant retained new counsel (Doc. 32), Defendant dropped the counterclaim (Docs. 35, 36).

The parties have now filed cross-motions for summary judgment.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232. When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*,

210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." (citation omitted)).

**III. Analysis**

    **A. Discrimination Claims**

Plaintiff alleges three counts of discrimination based on her HIV-positive status in the Amended Complaint: (1) violation of the FHA, (2) violation of the AFHA, and (3) violation of Title III of the ADA. (Am. Compl. ¶¶ 23–43.) In her Motion, Plaintiff argues that the evidence undisputedly shows that her discharge from Defendant's facility qualifies as unlawful discrimination under the FHA, AFHA, and ADA because it was triggered by her HIV-positive diagnosis. (*See generally* Am. Compl.) Plaintiff thus contends she is entitled to summary judgment as to Defendant's liability. In its Motion, Defendant argues that the undisputed evidence shows its decision to discharge Plaintiff was justified—and thus not unlawful discrimination—because (1) Plaintiff failed to request accommodation and Defendant's duty to determine whether the requested accommodation could be reasonably provided was not triggered, (2) the decision was permitted by the Arizona Administrative Code, and (3) Plaintiff presented a direct threat to the health or

safety of others that warranted her removal from the facilities. (D. Mot. at 10–12; D. Resp. at 2.) Defendant thus seeks summary judgment in its favor.

Because the FHA, AFHA, and ADA have substantially similar standards for discrimination and they are so grouped in the parties' briefing, the Court will discuss them together. *See Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1157 (9th Cir. 2013) ("The standards regarding disparate treatment claims under the ADA are typically identical [to the FHA], and courts accordingly interpret them in tandem." (citation omitted)); *Sottile v. Watermark Retirement Cmty. Inc.*, 2018 WL 6318351, No. CV-15-02584-PHX-DJH at *6 (D. Ariz. July 23, 2018) ("In interpreting the Arizona Fair Housing Act, Arizona state courts follow federal court interpretations because the Arizona Fair Housing Act was modeled after the Federal Fair Housing Act.").

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). In *Murray v. Mayo Clinic*, 934 F.3d 1101 (9th Cir. 2019), the court held a "but for" causation standard must be applied when evaluating claims under Title I of the ADA, abrogating case law holding that a "motivating factor" causation standard applied in ADA discrimination claims.[1] Under the "but for" causation standard, "an action 'is not regarded as a cause of an event if the particular event would have occurred without it.'" *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 347 (2013). Although the Court's research did not reveal a decision in the Ninth Circuit applying *Murray*'s ruling to Title III of the ADA specifically, there is nothing to indicate that the "but for" test should not apply, especially since Title I and Title III both use the phrase "on the basis of disability." 42 U.S.C. §§ 12112(a), 12182(a). Other circuit courts have similarly applied the "but for" causation standard to claims under Title III of the ADA. *See Doe v. R. I. Interscholastic League*, 137 F.4th 34, 41 (1st Cir. 2025) ("Under [. . .] Title III, the burden is on the plaintiff

---

[1] Though the 'but for' standard was not briefed by the parties, it is now the primary test for ADA and FHA claims in the Ninth Circuit and thus will be applied in the instant case.

- 5 -

to show that the disability is the cause-in-fact, or "but-for" cause, of the plaintiff's exclusion."); *A.H. by Holzmueller v. Ill. High School Ass'n.*, 881 F.3d 587, 592–93 (7th Cir. 2018) (Title III "prohibit[s] discrimination against individuals 'by reason of' the disability, or 'on the basis of' the disability," requiring plaintiff "to prove that, but for his disability, he would have been able to access the services or benefits desired.").

Similar to Title III of the ADA, the FHA makes it unlawful to "discriminate against any person" in the act of selling or renting a dwelling or providing access to its facilities "*because of* a handicap of [. . .] that person." 42 U.S.C. § 3604(f)(2) (emphasis added). The FHA's phrase 'because of' mirrors the ADA's "on the basis of" verbiage and is consistent with the practice of courts to treat FHA and ADA claims substantially similarly. 42 U.S.C. § 12182(a); *see Pac. Shores Props., LLC*, 730 F.3d at 1157. "We see no meaningful textual difference between [on the basis of] and the term[] 'because of' [. . .]—terms that the Supreme Court has explained connote 'but for' causation." *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228 (4th Cir. 2016) (citing *Univ. of Tex. Sw. Med. Ctr.*, 570 U.S. at 350 ("[T]he ordinary meaning of 'because of' is 'by reason of' or 'on account of.' (citations omitted))).

### 1.   FHA and ADA Discrimination

With regard to Plaintiff's claims that her discharge from Defendant's facilities was a discriminatory act in violation of the FHA and ADA, (Am. Compl. ¶¶ 23–43), Plaintiff argues that there is no factual dispute as to whether her discharge constitutes discrimination under those statutes because (1) the timing of her discharge aligned with the disclosure of her diagnosis to Defendant's staff, and (2) in his deposition, Defendant's owner Russell Appleton indicated that Plaintiff's discharge was specifically because of her HIV diagnosis. (Pl. Mot. at 9; Pl. SOF Ex. 8 (Appleton Deposition) at 49:25, 50:1–3.)

The FHA and ADA prohibit discrimination "because of" or "on the basis of" an individual's disability that prevents her from participating in "full and equal enjoyment" of a facility. 42 U.S.C. § 3604(f)(2); 42 U.S.C. § 12182(a). Accordingly, to prevail on a claim under either statute, a plaintiff must establish that she was prevented from participating in

or benefiting from a facility or service and that "but for" her disability, such exclusion would not have occurred. *See Murray*, 934 F.3d at 1105; 42 U.S.C. § 3604(f)(2); 42 U.S.C. § 12182(a). Defendant contends that there is an additional element, existing only by implication in case law, requiring that a plaintiff first make a request for accommodation before a facility's "duty to determine whether those requested accommodations could be reasonably provided" is triggered. (D. Mot. at 11–12 (citing *Nolan v. Starlight Pines Homeowners Ass'n*, 167 P.3d 1277, 1283 (Ariz. Ct. App. 2007)); D. Resp. at 2.) However, the Court agrees with Plaintiff that liability for a failure to make reasonable accommodations does not necessarily hinge on a requirement that the plaintiff first requested such accommodations. (Pl. Resp. at 6.) "It is axiomatic that an entity's duty to look into and provide a reasonable accommodation may be triggered when the need for accommodation is obvious, even if no request has been made." *Bax v. Doctors Med. Ctr. of Modesto, Inc.*, 52 F.4th 858, 869 (9th Cir. 2022).

The parties do not dispute that Plaintiff's HIV-positive status constitutes a disability protected under both the FHA and ADA or that Defendant is an entity subject to the statutes. (Pl. Mot. at 6–8; D. Resp. at 2.) What remains at issue is whether Plaintiff's HIV-positive status was the "but for" cause of her discharge. Plaintiff argues that the timing of her discharge, as well as Appleton's testimony, indicate that her discharge occurred solely because of her HIV diagnosis. (Pl. Mot. at 9.) Because her argument regarding timing relies merely on a suggested inference, it is not by itself dispositive. As for the second argument, Plaintiff cites Appleton's deposition, in which he stated that Plaintiff's discharge was "based on her condition, her other conditions as well as having HIV [sic]." (Appleton Deposition at 49:25, 50:1–3.) Plaintiff also points to the Daily Progress Note written about her on November 4, 2022, in which one of Defendant's staff wrote that "HIV is a factor for the decision but not the entire reason for discharge." (D. SOF Ex. 17, Daily Progress Note.) For its part, Defendant contends that the evidence shows that Plaintiff was discharged not because of her HIV diagnosis but rather because its facility and employees had a total lack of experience in "handl[ing] Plaintiff's needs" and she required a "more

robust program" that could treat both alcohol and drug addiction. (D. Mot. at 11; D. SOF ¶¶ 38–72, 74, Exs. 17, 18, 22.)

Considering the evidence proffered by the parties, a genuine issue of material fact remains as to whether Plaintiff's discharge from Defendant's facility would not have occurred in the absence of her HIV-positive diagnosis. As a result, neither party is entitled to summary judgment as to Defendant's liability for discrimination under the FHA, the AFHA, or the ADA.

### 2. Permissibility of Discharge

Defendant also argues that two affirmative defenses apply to Plaintiff's discrimination claims: (1) the Arizona Administrative Code permits and supports Defendant's decision to discharge Plaintiff in favor of a higher level of care, and (2) Plaintiff posed a direct threat to others in the facility that warranted her discharge. (D. Mot. at 10–13.)

#### a. Arizona Administrative Code

In defense of its decision to discharge Plaintiff and transfer her to a facility that could meet her requirement for a "higher level of care," (D. Mot. at 10–11), Defendant cites the Arizona Administrative Code ("AAC"), which provides that "[a]n administrator shall ensure that a resident is discharged from a behavioral health residential facility when the resident's treatment needs are not consistent with the services that the behavioral health residential facility is authorized and able to provide." Ariz. Admin. Code § 9-10-79 (C). Defendant maintains that its facility was "not intended to treat drug addiction" and its "programming was more focused on treating alcoholics." (D. Mot. at 7.) With regard to its contention that its facility was unable to "handle" Plaintiff's needs, Defendant points to "numerous records generated by Olive Branch" as to Plaintiff's need for elevated care. For example, in Appleton's November 4, 2022, Daily Progress Note, he states that her needs "out pace[] [sic] the skill or ability my team possesses," (Daily Progress Note), and in an Incident Report of the same date, Appleton wrote that Plaintiff's "underline [sic] condition of PTSD and recent suicide attempt may be beyond our ability to provide adequate mental

health care" and "[the facility] lack[s] the experience and necessary protocols to elevate monitoring" as "required." (D. SOF ¶¶ 68–70, 71, 72, 74, Exs. 17, 18.)

In her Response, Plaintiff cites Defendant's Policies and Procedures Manual to argue that Defendant offers treatment for a broad umbrella of disorders of substance abuse and addiction. (Pl. Resp. at 5–6; Pl. SOF Ex. 1 at 7, Manual.) She points to the "Scope of Services" section of the Manual to suggest that drug addiction is covered by Defendant's treatment options, since the facility's stated "mission" is to assist those with "diagnosed mental health disorder(s) and co-occurring disorders of substance abuse and/or addiction." (Manual at 7.) Plaintiff also cites her intake form, in which her initial "diagnostic impressions" included her "opioid use disorder" and suicidal ideations, to argue that Defendant was aware of her needs at intake and chose to admit her regardless. (Doc. 77, Exs. to Pl. SOF, Ex. 5.)

Determining whether the additional needs cited by Defendant fall within the scope of its services as cited by Plaintiff—and thus whether Defendant has a valid affirmative defense under the AAC—is a question for a factfinder. Neither party has "produce[d] evidence negating an essential element" of the other party's claim or defense, as is required to satisfy the summary judgment standard. *Nissan Fire & Marine*, 210 F.3d at 1102.

### b.  Direct Threat

Defendant also contends that its undisputed evidence shows that it "was permitted to discharge Plaintiff" because she "posed a direct threat to the health or safety of others."[2] (D. Mot. at 12 (citing 42 U.S.C. § 12182(3)).) The ADA defines a direct threat as "a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services." 42

---

[2] Plaintiff argues that Defendant should not be permitted to use direct threat as a defense because it failed to allege it as an affirmative defense in its pleading, as required by Fed. R. Civ. 8(c). (Pl. Resp. at 8.) However, "[a]lthough Rule 8 requires affirmative defenses to be included in responsive pleadings, absent prejudice to the plaintiff, the district court has discretion to allow a defendant to plead an affirmative defense in a subsequent motion." *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1023 (9th Cir. 2010), *overruled on other grounds by Castro v. City of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). Plaintiff demonstrates no prejudice resulting from Defendant's assertion of the affirmative defense of direct threat, so the Court will consider the defense.

U.S.C. § 12182(b)(3). "The existence, or nonexistence, of a significant risk must be determined from the standpoint of the person who refuses the treatment or accommodation, and the risk assessment must be based on medical or other objective evidence." *Bragdon v. Abbott*, 524 U.S. 624, 649 (1998).

In support of its argument, Defendant points only to evidence that it consulted with THS and relied on THS's medical expertise to determine that Plaintiff posed a significant enough risk to warrant discharge. (D. Mot. at 12–13.) In neither its Motion nor its Response to Plaintiff's Motion does Defendant cite evidence from the record—much less "medical or other objective evidence"—to support the direct threat defense or specify what risk Plaintiff posed. *Bragdon*, 524 U.S. at 649. For her part, Plaintiff cites various Center for Disease Control and National Institute of Health publications in her Motion that explain the risks that HIV-positive individuals do or do not pose within a community. She also points to the fact that Defendant was not performing any medical procedures on Plaintiff that would require the use of needles or sharing of bodily fluids to argue that her HIV-positive status posed no significant risk to the health or safety of others in the facility. (Pl. Mot. at 12; Appleton Deposition at 75:7–76:1.)

Although neither party cites substantial probative evidence, a genuine issue remains as to whether Plaintiff posed a direct threat that warranted her discharge, precluding summary judgment on Defendant's asserted defense.

### B. Retaliation Claims

In her Amended Complaint, Plaintiff claims that Defendant's now-dismissed counterclaim of defamation in the instant suit constituted unlawful retaliation in violation of the FHA, AFHA, and ADA's respective anti-interference provisions. (Am. Compl. ¶¶ 49–65.) In support, Plaintiff points to several emails sent from Defendant's counsel at the time to her counsel, (Doc. 102, Exs. to Pl. Resp., Exs. Q (Email 1), R (Email 2)), and argues that those emails contain language constituting "threats" intended to convince Plaintiff to dismiss the instant suit. (Pl. Resp. at 11–12.)

. . .

The FHA and ADA provide that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of" any right protected by the statute. 42 U.S.C. § 3617; 42 U.S.C. § 12203(b). A retaliation claim requires that the plaintiff make out a *prima facie* case by showing (1) involvement in a protected activity, (2) an adverse action, and (3) a "causal link between the two." *Brown v. City of Tucson*, 336 F.3d 1181, 1187, 1192 (9th Cir. 2003). "An ADA plaintiff must also demonstrate that she has suffered a distinct and palpable injury as a result of the threat." *Id.* at 1193.

The parties do not dispute that the first element is satisfied through Plaintiff's filing of the instant suit. *See Pardi v. Kaiser Found. Hosp.*, 389 F.3d 840, 850 (9th Cir. 2004) (holding that filing a civil lawsuit is a protected activity under the ADA). In dispute is whether the emails sent from Defendant's counsel to Plaintiff's counsel constitute an "adverse action" sufficient to establish a "threat[]" or "interfere[nce]" such that the FHA and ADA's anti-interference provisions were violated. *Brown*, 336 F.3d at 1187; 42 U.S.C. § 3617; 42 U.S.C. § 12203(b). In *Brown v. City of Tucson*, the Ninth Circuit declined to "defin[e] precisely what constitutes interference," but echoed the FHA and ADA's anti-interference provisions in holding that it is "clearly [. . .] unlawful to threaten … any individual in the exercise or enjoyment of … any right granted or protected" by the statute. *Brown*, 336 F.3d at 1192. Both parties point to *Strojnik v. Kapalua Land Co. Ltd* for a definition of 'interference' or 'threat' in this context. The *Strojnik* court differentiated between a suit (or claim) filed in civil response and a suit (or claim) filed as an unlawful threat by looking to whether the verbiage used explicitly "threaten[s] the filing of charges [. . .] unless [a plaintiff] drops his [. . .] claims." *Strojnik v. Kapalua Land Co. Ltd*, 379 F. Supp. 3d 1078, 1084–85 (D. Haw. 2019). The *Strojnik* court found no unlawful retaliation in part because "[n]o such threat [was] included in the correspondence" that showed that the defendants' decision to file charges was based on Strojnik's exercise of his rights. *Id.*

By contrast, in the instant case, a reasonable juror could find that a threat was included in the correspondence. Defendant's counsel wrote in his November 21, 2023 email that his client "has ample funds to afford a litigation attorney to countersue [Plaintiff]

[. . .], which is exactly what is going to happen **if this lawsuit isn't dismissed**." (Email 2 at 1 (emphasis added).) Such verbiage suggests that the proposed countersuit was a threat initiated because of Plaintiff's exercise of her rights, and thus the two appear to be causally linked. Therefore, a reasonable juror could find that the emails regarding the proposed countersuit constituted interference under the FHA and ADA's anti-interference provisions. *See* 42 U.S.C. § 3617; *see* 42 U.S.C. § 12203(b).

Defendant argues that, regardless of whether the emails constituted a threat under the FHA and ADA, Plaintiff did not suffer the "distinct and palpable injury" required to establish unlawful retaliation. *See Brown*, 336 F.3d at 1193. In particular, Defendant points to Plaintiff's lack of inclusion on the email chains in question. (D. Mot. at 14; Email 1; Email 2.) An injury under the ADA's anti-interference provision "could consist of either the giving up of her ADA rights, or some other injury which resulted from her refusal to give up her rights, or from the threat itself." *Brown*, 336 F.3d at 1193. Time spent defending a "frivolous" lawsuit can constitute an injury. *Walker v. City of Lakewood*, 272 F.3d 1114, 1124 (9th Cir. 2001).

Although Plaintiff did not give up her ADA rights, she contends that Defendant's now-dismissed defamation countersuit was frivolous, such that any time spent defending it constituted the requisite injury to Plaintiff. (Pl. Mot. at 16–17.) With respect to whether Defendant's counterclaim for defamation was frivolous, in Arizona, "[t]o be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 787 (Ariz. 1989). "As a matter of law, a statement is not actionable if it cannot reasonably be interpreted as stating or implying facts susceptible of being proved true or false. Put simply, the plaintiff must show that the statement is provable as false before a defamation action can lie." *BLK III, LLC v. Skelton*, 506 P.3d 812, 817 (Ariz. Ct. App. 2022).

In support of her contention that the countersuit was frivolous, Plaintiff cites Appleton's deposition, in which he stated that Plaintiff was discharged because of her HIV

diagnosis and the risk she posed to the safety of others in the facility, (Appleton Deposition at 49:25, 50:1–3), to argue that any statement she made to the Phoenix New Times was "admittedly true" and not defamatory. (Pl. Mot. at 17.) However, as stated *supra*, genuine issues of fact remain as to the reasons for Plaintiff's discharge, so Plaintiff's statements were not "admittedly true." As a result, Defendant's counterclaim for defamation was not frivolous on its face.

The second element of defamation requires that the statements made bring the defamed entity into some level of disrepute or impeach its honesty or reputation. *Godbehere*, 783 P.2d at 787. In deciding whether a statement is defamatory, the Court determines, as a matter of law, whether a statement is "capable of bearing" the meaning alleged by the entity, and, if so, "whether that meaning is defamatory." *Reynolds v. Reynolds*, 294 P.3d 151, 155 (Ariz. Ct. App. 2013) (quoting Restatement (Second) of Torts § 614(1) (Am. Law Inst. 1977)). Defendant alleges that Plaintiff "stated to the Phoenix New Times that she was removed from Olive Branch because she has HIV and this diagnosis made her 'unsafe.'" (Answer at 6–7.) Plaintiff contends that she told the Phoenix New Times that Appleton "told [Olive Branch patients] a resident was HIV positive and that the facility was no longer 'safe' for them." (Pl. Mot. at 17; Pl. SOF Ex. 11.) Plaintiff's and Defendant's construction of the statement is substantially similar, and the statement is "capable of bearing" the meaning alleged by Defendant in bringing the counterclaim. *Reynolds*, 294 P.3d at 155. Additionally, Defendant adequately alleged facts in its counterclaim raising the plausible inference that Plaintiff's statement would bring Defendant's facility into disrepute and impeach its reputation. *Godbehere*, 783 P.2d at 787. Thus, Defendant's counterclaim was not frivolous as a matter of law, and any time spent by Plaintiff defending the counterclaim did not constitute a distinct and palpable injury as required to establish unlawful retaliation. *Brown*, 336 F.3d at 1193.

Plaintiff also argues that, regardless of the substance of the defamation claim, her statements to the Phoenix New Times were "absolutely privileged under the litigation privilege." (Pl. Mot. at 17.) She contends that "[d]efamatory statements contained in

pleadings are absolutely privileged if they are connected with or have any bearing on or are related to the subject of inquiry." (Pl. Mot. at 17 (quoting *Drummond v. Stahl*, 618 P.2d 616, 619 (Ariz. Ct. App. 1980).) However, the next sentence of the *Drummond* court's decision emphasizes that "parties to judicial proceedings are generally granted an absolute privilege to use defamatory language **in pleadings**." *Drummond*, 618 P.2d at 619 (emphasis added). Defendant's defamation counterclaim did not focus on the substance of Plaintiff's pleading, but rather on her statements made to the Phoenix New Times, making the litigation privilege inapplicable. (Answer at 6–7.)

Without an injury, Plaintiff has not established a retaliation claim as a matter of law. Accordingly, the Court finds that Plaintiff's retaliation claims do not survive Defendant's Motion for Summary Judgment.

### C. Public Disclosure Claim

Finally, Plaintiff alleges that Defendant "publicly disclosed [her] HIV diagnosis with other Olive Branch residents without her knowledge or consent," constituting a public disclosure of private facts for which Defendant should be held liable. (Am. Compl. at 8–9.) Arizona recognizes a cause of action for publicity given to private life when one publicizes "a matter concerning the private life of another" and "the matter publicized is one of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Restatement (Second) of Torts § 652D; *see Anthony v. United States*, 632 F. Supp. 3d 1017, 1038–39 (D. Ariz. Sept. 30, 2022). For a cause of action such as publicity given to private life, the Arizona Supreme Court "has adopted the rule that where not bound by its previous decisions or by legislative enactment, it would follow the Restatement of the Law." *Reed v. Real Detective Pub. Co.*, 162 P.2d 133, 137 (Ariz. 1945).

Plaintiff argues that (1) disclosure of an HIV diagnosis is highly offensive because it can cause things like psychological harm, and (2) Plaintiff's HIV-positive status was not a legitimate matter of public concern because "a person's health and private life are inherently private matters." (Pl. Resp. at 13.) In support of her contention that Defendant

publicized her diagnosis, Plaintiff points to undisputed evidence of a group meeting during which Appleton informed the staff and residents of the facility that someone had been diagnosed with HIV. (D. SOF ¶ 63, Ex. 7 at 183:23–184:13.) However, the Restatement holds that 'publicity' in this context requires that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become public knowledge." Restatement (Second) of Torts § 652D, cmt.a. It further provides that, in this context, "it is not an invasion of privacy [. . .] to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Id.* Plaintiff presents no evidence indicating that her HIV diagnosis had been shared with the public at large, and she thus has not shown that her diagnosis was publicized in the manner required for a publicity given to private life claim. Without the requisite publicity, Plaintiff has not established the *prima facie* elements as a matter of law. Accordingly, the Court finds that Plaintiff's public disclosure claim does not survive Defendant's Motion for Summary Judgment.

**D. Damages**

Plaintiff's prayer for relief includes a request for punitive damages. Since the only claims that survive summary judgment are Plaintiff's FHA, AFHA, and ADA discrimination claims (Counts One, Two, and Three), the Court will only discuss punitive damages with respect to those.

**1. FHA and AFHA Claims**

Though in a discussion of punitive damages, the FHA's place in federal law and AFHA's place in state law warrants some differentiation[3] because the federal and Arizona standards regarding punitive damages are slightly different, the Court finds that under either standard, Plaintiff has not proffered the requisite facts to support the prayer for punitive damages for her FHA and AFHA claims.

The FHA provides that "if the court finds that a discriminatory housing practice has occurred [. . .], the court may award to plaintiff actual and punitive damages." 42 U.S.C.

---

[3] The Court recognizes that the elements of and damages available under the FHA and AFHA are identical and intends to try the claims together.

1  § 3613. Under the FHA, a showing of reckless indifference is sufficient for plaintiffs to
2  prevail on their punitive damages claim. *See The Fair Hous. Council of San Diego, Joann*
3  *Reed v. Penasquitos Casablanca Owner's Ass'n*, 381 F. App'x 674, 676–77 (9th Cir.
4  2010). "A finding of reckless indifference ultimately focuses on the actor's state of mind,
5  and requires that the defendant at least discriminate in the face of a perceived risk that its
6  actions will violate federal law to be liable in punitive damages." *Id.* at 677 (internal
7  citations omitted) (quoting *Koldstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999)). The
8  reckless indifference standard does not require that a defendant engage in "egregious"
9  conduct to be liable for punitive damages. *Id.*

10  By contrast, the Arizona Supreme Court has held that punitive damages cannot be
11  awarded "based on mere negligence, gross negligence, or recklessness." *Swift Transp. Co.*
12  *of Ariz. L.L.C. v. Carman*, 515 P.3d 685, 691–92 (Ariz. 2022) (citations omitted). Rather,
13  a plaintiff must demonstrate the defendant's "evil mind" by showing that his actions were
14  outrageous and created a "substantial risk of tremendous harm to others." *Id.* at 692. That
15  is, a plaintiff must show that the defendant knowingly or intentionally disregarded an
16  unreasonable risk of harm and appreciated its severity before deliberately ignoring it. *Id.*
17  at 693. Therefore, absent affirmative evidence of malice, a plaintiff generally must prove
18  the requisite "evil mind" by demonstrating that the defendant continued a course of conduct
19  with knowledge of the harm caused or to be caused by that conduct. *Id.* at 692–93.

20  Plaintiff argues that both the 'reckless indifference' and 'evil mind' standards are
21  met. (Pl. Resp. at 15.) In support of both standards, she points to Defendant's Policies and
22  Procedures Manual to argue that Defendant "knew state and federal law prohibited
23  discrimination on the basis of disability" and ignored such illegality in choosing to
24  discharge Plaintiff. (Pl. Resp. at 15; *see* Manual.) However, no reasonable juror could
25  conclude that the Manual by itself shows that Defendant was aware of a potential risk of
26  harm posed by discharging Plaintiff based in part on her HIV-positive diagnosis, or that
27  Defendant deliberately ignored that risk conducting the discharge. Accordingly, Plaintiff
28  has presented insufficient evidence to prove that Defendant discharged her with an 'evil

mind,' and thus the Arizona standard to warrant punitive damages for Plaintiff's AFHA claim has not been met.

The Manual is similarly not sufficiently probative of a 'reckless indifference' showing. Though under this standard Plaintiff is not required to prove that Defendant engaged in "egregious" conduct, Plaintiff still must prove that defendant "discriminate[d] in the face of a perceived risk that its actions will violate federal law." *The Fair. Hous. Council of San Deigo*, 381 F. App'x at 677. Again, no reasonable juror could conclude that the evidence presented by Plaintiff—Defendant's Policies and Procedures Manual—by itself proves Defendant's (1) perception of a risk or (2) choice to discriminate against Plaintiff "in the face" of such risk. Accordingly, Plaintiff's evidence is insufficient to prove that Defendant discharged her with 'reckless indifference,' and thus the federal standard to warrant punitive damages for Plaintiff's FHA claim has not been met. Accordingly, Defendant is entitled to summary judgment on Plaintiff's prayer for punitive damages.

### 2. ADA Claim

Although Plaintiff also requests punitive damages for her claim under Title III of the ADA, "[d]amages are not recoverable under Title III of the ADA—only injunctive relief is available for violations of Title III." *Wander v. Jaus*, 304 F.3d 856, 858 (9th Cir. 2002) (citing 42 U.S.C. §§ 12188(a)(1), 2000a–3(A)). Thus, Plaintiff cannot recover monetary damages—either actual or punitive—on her Title III discrimination claim.

In the Amended Complaint, Plaintiff makes no mention of injunctive relief, although she does pray for "any other relief that is just and proper." (Am. Compl. at 11.) The Ninth Circuit has held that relief that was not demanded in pleading may still be awardable so long as it is proper. *See Jet Inv., Inc. v. Dept. of Army*, 84 F.3d 1137, 1143 (9th Cir. 1996) (holding that a general prayer for relief, such as "further relief as may be proper in the circumstances," can provide sufficient notice of a later request for damages); *K. J. by and through Johnson v. Johnson*, 127 F.4th 1239, 1251–52 (9th Cir. 2025) (awarding expungement even though it was not specifically included in the plaintiff's prayer for relief). Because injunctive relief is the only option available to Plaintiff under

Title III, any monetary relief (as demanded in the Complaint) available for Plaintiff's discrimination claims, if granted by the factfinder, necessarily stems from the FHA claim, which is duplicative in substance to the Title III claim. Additionally, because the granting of equitable relief is a responsibility of the Court, not a fact finder, there is no relief under the ADA claim that can proceed to a jury trial. *See Teitscher v. Woodson*, 835 F.3d 936, 944–45 (9th Cir. 2016) ("[B]ecause of the wholly equitable nature" of the claim at issue, the plaintiff "had no right to a jury trial on that claim."); *Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527, 1592 n.4 (11th Cir. 1990) (With respect to a claim that lies in equity, "the jury could serve in an advisory capacity only."). As a result, although the Court will not grant summary judgment to Defendant on Plaintiff's discrimination claim under Title III of the ADA, the Court will hold a jury trial for only the FHA and AFHA discrimination claims, which mirror each other. If the jury finds Defendant is liable for discrimination, the parties may make any additional arguments related to injunctive relief under Title III to the Court after the departure of the jury.

**IT IS THEREFORE ORDERED** granting in part Defendant's Motion for Summary Judgment (Doc. 71). Defendant is entitled to summary judgment with respect to Plaintiff's public disclosure claim (Count Four), retaliation claims (Counts Five, Six, and Seven), and prayer for punitive damages, but not with respect to Plaintiff's discrimination claims (Counts One, Two, and Three).

**IT IS FURTHER ORDERED** denying Plaintiff's Partial Motion for Summary Judgment (Doc. 73).

**IT IS FURTHER ORDERED** that Counts One and Two for discrimination under the Fair Housing Act and Arizona Fair Housing Act will proceed to a jury trial. Although Plaintiff may not seek damages in conjunction with Count Three for discrimination under Title III of the Americans with Disabilities Act, if the jury finds Defendant is liable for discrimination, the parties may make any additional arguments related to injunctive relief

to the Court after the departure of the jury. The Court will set a pre-trial status conference by separate Order.

Dated this 8th day of August, 2025.

Honorable John J. Tuchi
United States District Judge