WILLIAM H. DOYLE, ARIZONA BAR NUMBER 007285
BRANDON D. MILLAM, ARIZONA BAR NUMBER 034696
DOYLE HERNANDEZ MILLAM
11811 N. TATUM BLVD., SUITE 2900
PHOENIX, ARIZONA 85028
TELEPHONE: (602) 240-6711
FACSIMILE: (602) 240-6951
WDOYLE@DOYLELAWGROUP.COM
BMILLAM@DOYLELAWGROUP.COM
FIRM EMAIL: ALG@DOYLELAWGROUP.COM

ATTORNEYS FOR DEFENDANT

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Hailei Joe, an individual, | NO. 2:23-cv-02154-PHX-JJT |
| Plaintiff, | |
| vs. | **DEFENDANT OLIVE BRANCH ASSISTED LIVING, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION** |
| Olive Branch Assisted Living, LLC, an Arizona limited liability company, | |
| Defendant. | |

Defendant Olive Branch Assisted Living, LLC hereby responds in opposition to Plaintiff's Motion for Reconsideration. As noted by Plaintiff in her Motion, a motion for reconsideration should only be granted in rare circumstances. *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). Plaintiff does not cite new evidence or an intervening change in controlling law in her briefing. Instead, Plaintiff argues that this Court committed clear error and that this Court's decision was manifestly unjust.[1] [Doc. 121 at 6] This Court should deny Plaintiff's request because Plaintiff's arguments are not supported by

---

[1] A motion for reconsideration is appropriate where the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

the record before the Court and available case law. Worse yet, on more than one occasion, Plaintiff omits key facts from the record and the law she cites in support of her position, relying on inaccurate legal principles, and inviting the Court to commit error.

## I.  LEGAL ARGUMENT AND RESPONSE

### A.  The motion confuses law and fact.

In filing this Motion, Plaintiff ignores the limiting principle stated within *Brown v. City of Tucson*, which clarified that anti-interference provisions "cannot be so broad as to prohibit 'any action whatsoever [that] in any way hinders a member of a protected class." 366 F.3d 1181, 1192 (9th Cir. 2003). As stated by the *Brown* court, a plaintiff bringing forth a retaliation claim under either act's anti-interference provisions must demonstrate they sustained a "distinct and palpable injury as a result of threat." *Id*.

Plaintiff's Motion cites several cases which predate *Brown* and/or are from different jurisdictions. In particular, Plaintiff heavily relies on *Walker's* "burden-shifting" analysis but completely glosses over *Walker*'s initial analysis concerning whether the plaintiffs had standing to bring a claim. *Walker v. City of Lakewood*, 272 F.3d 1114, 1122 (9th Cir. 2001). Had Plaintiff fully reviewed and considered *Walker*, she would have realized the futility of her Motion because *Walker*'s initial analysis mirrors *Brown*: "The sole requirement for standing to standing to sue under [the FHA] is the Art[icle] III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered '**a distinct and palpable injury.**'" *Id*. (emphasis added). The *Brown* decision, which came after *Walker*, clarified that with respect to retaliation claims, plaintiffs must demonstrate a distinct and palpable injury *as a result of the threat.* As this Court correctly noted in its decision, "[w]ithout an injury, Plaintiff has not established a retaliation claim as a matter of law." [Doc. 117 at 14]

In general, Plaintiff's Motion seeks to confuse two issues: 1) standing to bring a

discrimination claim under the FHA or ADA, and 2) standing to bring a retaliation claim under the anti-interference provisions under either act.  There should be no confusion given that this Court's minute entry specifically provided a separate and complete analysis concerning Plaintiff's discrimination claims and Plaintiff's retaliation claims. [Doc. 117 at 4-8, 10-14]

**B.   Retaliation claims under the FHA ADA, and AFHA's anti-interference provisions are not presumed under law.**

With respect to her retaliation claim against Olive Branch, Plaintiff argues that her injury should have been presumed. [Doc. 121 at 9] Although Plaintiff cites several cases in support of her argument, none of the authority cited by Plaintiff concerns a retaliation claim. *See Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814 (9th Cir. 2001) (concerns discriminatory claim resulted in a lawsuit alleging violations under the FHA; no retaliation claim discussed); also *see Harris v. Itzhaki*, 183 F.3d 1043 (9th Cir. 1999) (concerns discriminatory claim resulted in a lawsuit alleging violations under the FHA; no retaliation claim discussed).

Plaintiff is trying to conflate the two issues together. The *Brown* court, however, could not have made this issue any clearer to Plaintiff:

> We emphasize that conclusory allegations – without more – are insufficient to state a violation under §503(b)[2]. [internal citations omitted]. An ADA Plaintiff must also demonstrate that she has suffered a 'distinct and palpable injury' as a result of the threat. That injury could consist of either giving up her ADA rights, or some other injury which resulted from her refusal to give up her rights, or from the threat itself.

366 F.3d at 1193.

---

[2] § 503(B) has been renumbered and is now 42 U.S.C. § 12203(a). As recognized by this Court in its decision, the elements of and damages available under the FHA (42 U.S.C. § 3617), AFHA (A.R.S. § 41-1491.18), and ADA (42 U.S.C. § 12203(a)) are identical.

As noted in Olive Branch's Motion for Summary Judgment, Plaintiff failed to present any evidence that she had suffered a "distinct and palpable injury as a result of threat" in support of her retaliation claims. That is, until Plaintiff argued for the first time while responding to Olive Branch's Motion that she had sustained an injury defending against Olive Branch's filing of a now-dismissed defamation claim.

### C. Plaintiff's voluntary interview with the Phoenix New Times is not protected by the litigation privilege.

In addition to this Court's acknowledgment that the litigation privilege is only applicable "in pleadings," the *Drummond* court further expands on the context in which the privilege is applicable by noting that "persons should speak freely and fearlessly **in litigation**." *Drummond v. Stahl*, 127 Ariz. 122 (Ariz. Ct. App. 1980). (emphasis added). [Doc. 117 at 14 ("[T]he *Drummond* court's decision emphasizes that 'parties to judicial proceedings are generally granted an absolute privilege to use defamatory language **in pleadings**.'") (emphasis added)]

The Phoenix New Times article was not just an article previewing Plaintiff's federal lawsuit, but also included direct quotations from both Plaintiff and Plaintiff's counsel. In the article, Plaintiff's counsel (Jonathon Dessaules) offered statements that would ultimately become a part of the underlying bases for Olive Branch's now-dismissed counter claim:[3]

> When that diagnosis came, literally, the day it came, they held a meeting," said Jonathon Dessaules, who is Joe's lawyer. "She didn't know what the purpose of the meeting was. And they said, '**Hey, someone here has HIV and none of us are safe.**'
>
> [ . . . ]
>
> "This has not been a walk in the park for her," Dessaules said. "This was a one-two punch: **First getting an HIV diagnosis**

---

[3] In its now-dismissed counter claim, Olive Branch alleged that Plaintiff "stated to the Phoenix New Times that she was removed from Olive Branch because she has HIV and this diagnosis made her 'unsafe.'" *See* Doc. 117 at pg. 13:13-15, *also see* Doc. 23 at ¶¶ 6-7.

> **and not being told what it means, and then, the very next thing, an hour later, being told, 'You shouldn't live here anymore.'** That is a gut punch!"
>
> [ . . . ]
>
> "This is a care facility that exists to help people," Dessaules said. "They're taking the most susceptible people, and they're just marginalizing them, saying, **'sorry, we're not gonna help you because of your diagnosis.'**"

[Doc. 121-1 at 3-4]

Though Plaintiff painstakingly scrutinizes the Phoenix New Times' article – pointing out that the Phoenix News Times' article includes only direct citations from Plaintiff's lawsuit or are instead attributed solely to the Phoenix News Times' journalist who conducted the interview – Plaintiff somehow skips over those statements offered by her counsel on Plaintiff's behalf.

While Olive Branch can only speculate as to the reason Plaintiff failed to address those statements made by her counsel to the Phoenix New Times, the most likely reason is that Plaintiff intends to argue that the statements offered by her counsel are not her own. If Plaintiff were to make such an argument, however, Plaintiff will have to face the irony that Plaintiff's *entire* retaliation claim relies on statements that were made by Olive Branch's former counsel – and not by Olive Branch itself. Plaintiff must have realized this as she began to draft her motion and provided this Court with a breakdown of each statement and each statement's source. Plaintiff's theory essentially holds anything undersigned counsel says as potentially actionable retaliation; or really, anybody that is sued under the FHA. That does not make sense. It certainly is not what was intended, either.

### D.  Plaintiff has not suffered a "manifest injustice."

As cited and argued by Plaintiff in her Motion, "a 'manifest injustice' is an error that is direct, obvious, and observable." *de Borja v. Razon*, 340 F.R.D. 400, 408-09 (D. Or. 2021). Plaintiff removed the dispositive term from *de Borja*, however. The exact citation is as

follows: "A 'manifest injustice' is defined as 'an error **in the trial court** that is direct, obvious, and observable." *Id.* at 409 (citing BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "manifest injustice" as an error in the trial court that is "direct, obvious, and observable.").

Had Plaintiff actually reviewed the facts in *de Borja*, she would have realized that the "manifest injustice" in *de Borja* concerned whether the plaintiffs in that case were provided "leave to file a supplemental declaration" before the court issued its opinion. *Id*. In other words, a "manifest injustice" occurs when one of the parties is denied the opportunity to be completely heard on an issue before the court proceeds with its decision.

Plaintiff was given a full and fair opportunity to be completely heard on each and every issue decided by this Court. This was a fully briefed set of competing summary judgment motions, filed after discovery closed. There is nothing new in the motion for reconsideration; even the exhibit is part of the Court's record, and was analyzed in the Court's decision. Therefore, no "manifest injustice" has occurred in this case because Plaintiff has failed to identify any "error in the trial court that is direct, obvious, and observable." *Id.*

**E.    A "manifest injustice" has nothing to do with an award for "punitive damages."**

Plaintiff also asks the Court to vacate summary judgment in Olive Branch's favor on Plaintiff's punitive damages claim. In support of her argument, Plaintiff relies entirely on her misunderstanding of the term "manifest injustice." She does not even bother with the analysis of whether she has made a prima facie case of punitive damages. And that's because she hasn't. Offering nothing else, Plaintiff fails to advance any other argument in support of her position. Plaintiff makes absolutely no effort to discuss any of the reasoning offered by this Court in its ruling.

As discussed above, the term "manifest injustice" has absolutely nothing to do with punitive damages. Yet, Plaintiff improperly ties these two issues together. Plaintiff's

arguments are misleading and invites this Court to commit clear error.

## II. CONCLUSION

In general, Plaintiff's Motion seeks to confuse issues and, on more than one occasion, omits key facts from the factual record and from the case law she cites. Had these oversights only happened once, they could be more easily overlooked as simple mistakes. The irony here is that if Olive Branch were to seek sanctions under Rule 11 – and if this Court were to adopt Plaintiff's retaliation theory – Olive Branch would expose itself to violations under the AFHA, FHA, and ADA's anti-inference provisions for "retaliating." This is the precise reason *Brown* emphasized that any claim brought under the Acts' anti-inference provisions require a "distinct and palpable injury as a result of the threat."

For the foregoing reasons, Plaintiff's Motion for Reconsideration should be disregarded in its entirety. In the event that Plaintiff seeks an award for attorneys' fees in this case, Plaintiff should not be entitled to her reasonable attorneys' fees associated with this Motion.

DATED this 4th day of September, 2025.

DOYLE HERNANDEZ MILLAM

By /s/ Brandon D. Millam
William H. Doyle
Brandon D. Millam
11811 N. Tatum Blvd., Suite 2900
Phoenix, Arizona 85028
***Attorneys for Defendant***

**ELECTRONICALLY** transmitted this 4th day of September, 2025, the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic filing to the following CM/ECF registrants:

Jonathan A Dessaules, Esq.
Douglas M. Imperi, Jr., Esq.
**DESSAULES LAW GROUP**
7243 North 16th Street
Phoenix, AZ 85020
jdessaules@dessauleslaw.com
dimperi@dessauleslaw.com
*Attorneys for Plaintiff*

/s/ J. Lance